SANDRA SUSAN O'NEIL, APPELLANT, V. JEFFREY
BEHRENDT, APPELLEE.

322 N.W.2d 790

Filed August 6, 1982. No. 44247.

Kennedy, Holland, DeLacy & Svoboda, for appellant.

Norman H. Wright of Fraser, Stryker, Veach, Vaughn, Meusey, Olson & Boyer, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, and HASTINGS, JJ.

HASTINGS, J.

The plaintiff, Sandra Susan O'Neil, who was a passenger in a motor vehicle which was involved in an accident, has appealed from a jury verdict and judgment entered in her favor in the amount of $1,000, and from the subsequent order of the District Court which overruled her motion for a new trial. She assigns as error the inadequacy of the verdict and the failure of the trial court to instruct the jury on non-imputation of negligence to the plaintiff.

Mrs. O'Neil is a 34-year-old housewife and the mother of two children, ages 11 and 7 years. She is

also a registered nurse, but with the exception of 2 years of part-time employment beginning in 1970, she has not practiced her profession since the birth of her first child in 1969.

On December 6, 1976, the plaintiff was a guest passenger in a motor vehicle being driven by a friend, Mrs. Constance Vawter. They were on their way to their church for a meeting of the Brownie troop of which the plaintiff was the leader. They drove west on Elm Street in the city of Omaha to 60th Street, which is a median-divided street, then turned north on 60th to Bancroft where a break in the median permitted them to turn back south on 60th by the use of a "U-turn." However, Mrs. Vawter was not able to complete the turn because her right front wheel struck the west curbing of 60th Street, causing her to stop headed in a southwesterly direction. Shortly thereafter, and before they were able to move, the motor vehicle in which the two women were riding was struck from the rear by one being operated in a southerly direction on 60th Street by the defendant, Jeffrey Behrendt.

Soon after the accident the plaintiff testified that she did not feel very good and started having double vision. She was then taken to Bergan-Mercy Hospital where she was seen in the emergency room by a physician, X-rayed, given some medication, and sent home to contact her own physician. She stated that she stayed in bed for a couple of days, and after getting up to attempt to carry on her normal activities, she began having some discomfort. After several weeks, she said, she realized she was not getting any better, she was having a lot of stiffness and pain, and so she made arrangements for an examination by Dr. Gerald Ries. According to the medical records this would have been on February 9, 1977. Dr. Ries took a series of X-rays, did an examination in the office, and prescribed medications for pain and relaxation. Mrs. O'Neil further testified

that she saw Dr. Ries on a regular basis and took physical therapy under his direction for a period of 2 weeks. She continued to have pain in her neck and down into her shoulders, arms, and hands, and finally, in June of 1977, at the urging of Dr. Ries, she was admitted into Bergan-Mercy Hospital for a little over a week for additional therapy and traction.

On July 4, 1977, Mrs. O'Neil was in another automobile accident in which the car in which she was riding was struck in the rear by another automobile. It happened that the plaintiff had an appointment to see Dr. Ries on July 5, so she told him about the latest episode. However, she contends that the July 4 impact "really wasn't too bad," and that she did not have any more problems than those she was already experiencing. The plaintiff continued to see Dr. Ries every 6 to 8 weeks for some period of time, and was then told by him to just come in when needed. In July of 1979 Dr. Ries recommended a myelogram and anterior cervical fusion. However, because of the uncertainties involved, she said that she has never agreed to undergo those procedures. She has not had further medical care since that time. It should be stated at this point that Mrs. O'Neil also testified as to an automobile accident in which she was involved in 1968. Although she saw a physician as a result of that accident, she claimed that all symptoms disappeared within 1 month.

The plaintiff, in describing her activities since the 1976 accident, claims that there are many things around the house that she is unable to do, such as lifting, running the vacuum cleaner, and helping with the yard work. The plaintiff's description of the pain that she has suffered and the restriction on her activities was corroborated by the testimony of her husband.

Dr. Ries, a board-certified orthopedic surgeon, described the course of treatment given Mrs. O'Neil, which in substance is that as described by her. Of

particular importance for our consideration is his description of the findings made during a December 21, 1977, examination of the plaintiff. He stated that she had pretty much discontinued use of a foam cervical collar which he had given her following the July 4 accident. According to him, she was still having some pain on the left side of her neck, which complaint had originated following the December 1976 accident. He made no mention of any right side pain which had been the area of her specific complaint due to the July 4 accident. He gave as his opinion that, as of the date of that examination, "I thought that she was pretty well over the symptoms and the findings that we had had from the July 4th accident, and told her that I felt that her problems in December were related to the problems that she was having prior to this [July 1977] accident."

It was Doctor Ries' opinion, based upon a reasonable degree of medical certainty, that as of the date of his last examination, July 25, 1979, the pain which she was then suffering was caused by the accident of December 6, 1976; that the symptoms would continue; and that as a result of that accident she would have approximately a 20 percent permanent impairment of her cervical spine. He also testified that the plaintiff would require future medical attention, and that he recommended a myelogram and the probability of a surgical anterior cervical fusion. He gave as his opinion that such surgery, including his fee, hospital care, and medicines, would amount to approximately $3,700.

As to the matter of medical costs actually incurred to the date of the trial, the parties stipulated that "if the proper person were called, he or she would testify that hospital, physician and medical expenses and services in the amount of $1,641.18 were incurred by Mrs. O'Neil *as a result of the accident of December 6, 1976,* and that the charges for the same are fair and reasonable." (Emphasis supplied.)

The defendant made no objections to any of the instructions proposed and given by the court to the jury. The plaintiff objected only to the court's failure to give her requested instruction, based on NJI 7.21, to the effect that if the jury found that Constance Vawter, the driver of the motor vehicle, was in any way negligent, such negligence could not be charged to the plaintiff. This request was refused. The court's instructions did allow the jury to find in favor of the plaintiff if it concluded that the defendant was negligent and that such negligence, "concurring or combining" with the negligence of plaintiff's host, was a proximate cause of the accident. More specifically, instruction No. 8 provided in part that before the plaintiff could recover, she must prove "2. That such negligence, if any, of the defendant was the proximate cause of the collision; or that the negligence of the defendant concurring or combining in any degree with the negligence, if any, of the driver of the vehicle in which plaintiff was riding as a passenger, was a proximate cause of the collision." In instruction No. 15, concurrent negligence was defined as "Where the independent acts or omissions to act of two or more persons combine to proximately cause an injury indivisible in its nature, each such act or omission to act is itself a proximate or concurrent cause, and any one or more of such persons may be held responsible for the entire injury. This is true even though one may have been more negligent than the other."

These instructions fully define the affirmative aspects of concurrent negligence as it relates to proximate cause, and the trial court followed the generally accepted rule of instructing in a positive, rather than a negative, manner. However, it requires no citation of authority to establish the proposition that, under the circumstances of this case, any negligence on the part of the plaintiff's host driver could not be imputed to the plaintiff. This is a concept of the law

which is difficult for laymen to grasp. It is for this reason, we believe, that the Nebraska Supreme Court Committee on Pattern Jury Instructions proposed, and this court adopted, NJI 7.21, and we believe that plaintiff's tendered instruction should have been given. It remains to be seen whether the court's failure to do so constituted prejudicial error.

Although not particularly definitive, the rule in this state has long been that where the amount of damages allowed by a jury is clearly inadequate under the evidence in the case, it is error for the trial court to refuse to set aside such verdict. *Webster v. Halbridge,* 185 Neb. 409, 176 N.W.2d 8 (1970). In that case the jury returned a verdict of $1,600 in the face of special damages of approximately $2,000, plus evidence of pain and permanent scarring. *Bohn v. Kruger,* 185 Neb. 407, 176 N.W.2d 14 (1970), involved stipulated medical expense of $3,194.99 and a verdict in the same amount, which seemingly ignored additional uncontested damages for hired labor and obvious injuries requiring a period of hospitalization. In *Gross v. Johnson,* 174 Neb. 273, 117 N.W.2d 534 (1962), we reversed the action of the trial court in refusing to set aside a verdict in the amount of $1,998.62. This was equal to the undisputed total sum of the special damages, ignoring any damages for injuries, disability, pain, and loss of income.

The defendant argues that the stipulation as to damages was no more binding on the jury than if the witnesses had actually been called, qualified as experts, and testified in person. With this statement we agree. However, the fact remains that the testimony was undisputed, and that fact may be considered in determining whether or not the verdict was inadequate. *Gross v. Johnson, supra.*

In attempting to explain the rather meager verdict returned in this case, the defendant argues that perhaps the jury determined that a portion of the plaintiff's medical expenses was attributable to the

accident of July 4, 1977, or that the jury concluded that some of the expense was incurred by the plaintiff purposefully in anticipation of making a claim. Of course, either one of these theories is not beyond the realm of possibility. If that were the only issue in this case, one might be hard pressed to justify a reversal on that basis.

However, rather than a demonstration of sympathy for the plaintiff, as suggested in the defendant's brief, it is the more likely conclusion that, in returning the verdict that it did, the jury felt sorry for the defendant in view of the facts of the accident which perhaps indicated a higher degree of negligence on the part of the plaintiff's host. In other words, the verdict smacks of a compromise effected by the unwarranted placing of some of the burden for the host's negligence on the plaintiff. It is to prevent such a misapplication of the law, as we have suggested earlier, that NJI 7.21 was promulgated, fully supported by case law of long standing, and which formed the basis for plaintiff's requested instruction on that subject. As stated by this court in *Stahlhut v. County of Saline,* 176 Neb. 189, 203, 125 N.W.2d 520, 529 (1964): " 'Instructions must be considered and construed together. If they are not sufficiently specific in some respects, it is the duty of counsel to offer requests for instructions that will supply the omission. And, unless this is done, the judgment will not ordinarily be reversed for such defects.' " The corollary of that rule, of course, would be that if the instructions, considered and construed together, are not sufficiently specific in some respects and counsel offers a requested instruction that is a proper statement of the law and which will supply the omission, but which is refused by the trial court, the judgment will be reversed upon a showing of prejudice.

Considering the undisputed evidence in the case, we conclude that the failure of the District Court to

give the plaintiff's tendered instruction worked to the plaintiff's prejudice, resulting in what we believe to be a wholly inadequate verdict under the circumstances, and its order overruling the motion for a new trial is reversed.

When error exists as to only the issue of damages and the judgment is in other respects free from error, and it is clear that no injustice will result from doing so, a reviewing court may, when remanding a cause for a new trial, limit the new trial to such issue. *Caster v. Moeller,* 176 Neb. 446, 126 N.W.2d 485 (1964). Accordingly, the cause is remanded for a new trial on the issue of the amount of the damages only.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., concurs in the result.