LINDA BAY, APPELLANT, V. JOHN J. HOUSE, APPELLEE.

412 N.W.2d 466

Filed September 18, 1987.    No. 85-952.

Paul Korslund of Everson, Wullschleger, Sutter, Sharp, Korslund & Willet, for appellant.

Alan L. Plessman, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Appellant, Linda Bay, received a $10,000 judgment against appellee, John J. House, for personal injuries from an auto accident. Bay appeals, claiming inadequate damages and assigning these errors: (1) The jury verdict was wholly inadequate and contrary to the evidence on damages, and (2) the court erred in excluding medical testimony bearing on her damages. We affirm.

During the evening hours of Thursday, June 24, 1982, Bay was driving north in her car on a paved highway. House was driving south on the same highway; he drove his van across the median into Bay's path. The vehicles did not collide. In avoiding a collision, Bay believed that she bumped her left knee on the car instrument panel, sustaining an injury. At that time, Bay was married, was the mother of two children ages 5 and 10

years, and was employed 20 hours a week at K-Mart at $3.90 per hour, performing duties that required some heavy lifting.

A brief summary of some medical facts shows that after the accident she drove her car home; she waited until Saturday, June 26, before going to the emergency room in a Lincoln, Nebraska, hospital, where she was told she had a hamstring pull. On Monday she returned to work for about 3 weeks until her family doctor referred her to Dr. David Heiser, an orthopedic surgeon, who diagnosed her injury as a knee contusion and recommended a set of exercises, telling her she could return to work on November 16, 1982. She was next referred to Dr. Frederick Hathaway, an orthopedic surgeon, who performed arthroscopic surgery on November 15, 1982, with the diagnosis that both surfaces of the kneecap were injured. In December 1982, Bay fell at her home when her knee "gave out." She worked from January through March 1983. In September 1983, Dr. Hathaway performed the second surgery on her knee, when a screw was inserted in the knee, moving the patellar tendon medially to relieve pressure.

Bay returned to work in January 1984, for about 2 months. She was examined by Dr. William Fulcher, an orthopedic surgeon, on February 1, 1984. Trial began in October 1985.

## EXCLUSION OF MEDICAL TESTIMONY

The admission or exclusion of expert testimony is largely within the broad discretion of the trial court. *Johannes v. McNeil Real Estate Fund VIII*, 225 Neb. 283, 404 N.W.2d 424 (1987). "[T]o obtain reversal on the grounds of the exclusion of evidence, a clear abuse of discretion must be shown." *Lincoln East Bancshares v. Rierden*, 225 Neb. 440, 450, 406 N.W.2d 337, 343 (1987).

The excluded evidence relates to the depositions of both Dr. Hathaway, the treating doctor, and Dr. Fulcher, a consulting doctor.

Dr. Hathaway earlier stated that he was unable "to make any kind of estimate as to future medical expenses." Following that, his excluded testimony was that he anticipated that Bay would have future expenses and that it was possible Bay would need further medication and therapy for pain and discomfort in her knee. Appellee's objection to these opinions on the bases of

speculation and no foundation was sustained. Dr. Fulcher's excluded opinions were that it was possible that a person with Bay's knee injury could have a temporary weakness in her leg muscle, which could cause her to fall, and that it was possible that she might need more surgery. Appellee's objection to that testimony as speculative and lacking foundation was sustained. Under the state of that record, there was no abuse of the trial court's discretion in excluding that testimony.

## INADEQUACY OF VERDICT

A jury verdict will not be disturbed on appeal as inadequate unless it is so clearly against the weight and reasonableness of the evidence and so disproportionate to the injury proved as to indicate that it was the result of passion, prejudice, mistake, or some other means not apparent in the record, or that the jury disregarded the evidence or rules of law. *Bashus v. Turner*, 218 Neb. 17, 352 N.W.2d 161 (1984).

On the issues of medical damages and proximate cause, Bay places reliance on the stipulation that if Dr. Hathaway were called as a witness, he would testify that the medical expenses of $7,350.73 were fair and reasonable and necessary for Bay's treatment and that they were proximately caused by the June 24, 1982, accident. The jury as trier of the facts need only consider that stipulation along with all of the other evidence on the issues presented by the court's instructions. We also consider it, *O'Neil v. Behrendt*, 212 Neb. 372, 322 N.W.2d 790 (1982), along with the whole record.

Bay argues that the evidence shows a loss of wages in excess of $5,070, the stipulated medical expenses were $7,350.73, and those damages alone exceeded the verdict; therefore, the jury did not consider her damages for pain and suffering, disability, future medical expenses, and loss of future earning power. Problems with that argument include contrary and conflicting evidence on the issues of cause, intervening cause, extent of the claimed injury, and damages.

It is for the jury, as trier of the facts, to resolve conflicts in the evidence and to determine the weight and credibility to be given to the testimony of the witnesses. *Forker Solar, Inc. v. Knoblauch*, 224 Neb. 143, 396 N.W.2d 273 (1986).

There were many conflicts in the evidence relating to the

nature of Bay's injury, the course of treatment, the effect of the December 1982 fall at her home, the improvement of the condition of her knee, her ability to work, and the loss of wages. The jury could find that the evidence of future medical expenses and loss of future earning power was inconclusive. Her treating doctor only limited her work to preclude heavy lifting and climbing. Bay testified that she only looked at a few places for work and that she really wanted a part-time bookkeeping job, so that she could stay at home with her two children.

The jury resolved the conflicts in the evidence, and we cannot say that the verdict was either clearly erroneous or the result of mistake, or that the jury disregarded the evidence.

AFFIRMED.