NATALIE MURRISH, APPELLANT, V. TY L. BURKEY, APPELLEE.
510 N.W.2d 367

Filed April 6, 1993.   No. A-91-299.

Vincent M. Powers for appellant.

Stephen L. Ahl and Michael A. England, of Wolfe, Anderson, Hurd, Luers & Ahl, for appellee.

CONNOLLY, MILLER-LERMAN, and WRIGHT, Judges.

CONNOLLY, Judge.

## I. INTRODUCTION

This appeal arises from a jury verdict for the appellant in a personal injury action. The appellant filed a motion for new trial or, alternatively, for additur, on grounds that the damages awarded were clearly inadequate. The trial court overruled the motion. We reverse, and remand for a new trial on the issue of damages.

## II. FACTS

On the night of August 2, 1986, 8 days before her 16th birthday, the appellant, Natalie Murrish, was one of three passengers in a 1979 CJ5 Renegade Jeep. The driver of the Jeep was the appellee, Ty L. Burkey, who was 16 years old at the time. The other two passengers, mutual friends of Murrish and Burkey, also were teenagers. Murrish was seated in the rear compartment of the Jeep, directly behind the driver's seat. The Jeep's rear compartment had no actual seat and no restraining belt.

The group decided to go off-road driving, or "four wheeling." Burkey pulled the Jeep off the road and drove through a field, eventually coming to a steep hill. He drove the Jeep up and down the hill three times without incident. As the Jeep neared the top on the fourth trip up the hill, it began to lose traction. The Jeep began to slide back down the hill, and the tires apparently became stuck in a rut. This caused the Jeep to begin turning sideways and then tip over. The Jeep rolled down the hill, turning over several times. Murrish was thrown from the tumbling Jeep and suffered a broken right arm.

Two surgeries were required to treat the broken arm. The arm was placed in a cast that extended from the palm of Murrish's hand to her shoulder. Three months later, that cast was replaced by a smaller one which Murrish wore for another 3 months. As a result of the surgeries, Murrish bears a surgical

scar approximately 3 inches long on the back of her arm just above the elbow.

The parties stipulated that a medical expert would have testified that the following medical expenses for treatment of Murrish's broken arm were fair, reasonable, and necessitated by the accident: $5,753.09 for the hospital stay, $980 for the surgeon, $240 for the anesthesiologist, $198 for the radiologist, and $175 for physical therapy. The stipulation was accepted and approved by the court during the trial. At that time, the court instructed the jury to accept the stipulation as fact. The record does not indicate whether that oral instruction was incorporated into the court's written instructions for jury deliberation.

At trial, Burkey testified that the decision to go four wheeling, including the hill-climbing episode, had been spontaneous. Murrish, too, testified that the off-road excursion had not been planned ahead of time. However, Murrish had gone four wheeling with Burkey on prior occasions, and the record includes a statement, signed by Murrish 52 days after the accident, saying that "[w]e all wanted to go hill climbing & I did not object to what [Burkey] was doing." Burkey's counsel used the statement on cross-examination to impeach Murrish on the question of whether she knowingly and voluntarily had participated in the four wheeling and hill climbing. The court received the statement into evidence without issuing a limiting instruction that the statement should be considered for impeachment purposes only.

The cross-examination of Murrish included the following testimony:

> [Burkey's counsel:] Would it be a fair statement that on the day of this accident that you knew that the road surface would be different when you left a paved portion of the roadway and entered a field or an off-the-road situation?
>
> [Murrish:] Yes.
>
> [Burkey's counsel:] Okay. Generally open fields are not the same as a paved roadway, are they?
>
> [Murrish:] No.

[Burkey's counsel:] What difference did you know on that day would exist or anticipate it existed?

[Murrish:] That it would be bumpy.

[Burkey's counsel:] That there might be ruts?

[Murrish:] Yeah.

. . . .

[Burkey's counsel:] Would it be a fair statement that when you began participating in the off-the-road driving that night and the hill climbing, that you realized that there was a possibility that this Jeep may hit a rut once it left the paved portion of the road and got into an open field area?

[Murrish:] Yeah.

[Burkey's counsel:] You knew there were ruts out there, didn't you, in this open field area?

[Murrish:] Yes.

Murrish also acknowledged that had she not wanted to participate in the activity, she knew Burkey well enough to tell him to either quit the hill climbing or let her out of the Jeep.

At the jury instruction conference, Murrish's counsel objected to the following instruction on assumption of risk:

### B. BURDEN OF PROOF

In connection with the defense of "assumption of the risk", the burden is upon the defendant to prove, by the greater weight of the evidence, each and all of the following:

1. That the plaintiff knew of and understood the danger;

2. That the plaintiff voluntarily exposed herself to that danger; and

3. That the plaintiff's injury occurred as a result of her exposure to that danger.

### C. EFFECT OF FINDINGS

If the defendant has met his burden of proving that the plaintiff assumed the risk, then your verdict must be for the defendant . . . .

If the defendant has not met this burden of proof, you must disregard the defense of assumption of risk.

The instruction was given. The jury found in favor of Murrish

in the amount of $5,753.09, the cost of the hospital stay. Murrish filed a motion for new trial or, alternatively, for additur, arguing that the damages awarded by the jury were inadequate as a matter of law. Burkey filed a motion asking the court, pursuant to Neb. Rev. Stat. § 25-1222.01 (Reissue 1989), to apply to the damages a $5,000 credit for advance payment of Murrish's medical expenses, thereby reducing the damages to $753.09. Burkey's motion was granted. Murrish's motion for new trial or additur was overruled.

### III. ASSIGNMENTS OF ERROR

Murrish argues that the court erred by (1) giving the instruction on assumption of risk, (2) applying a $5,000 credit to the damages award, and (3) overruling the motion for new trial or additur.

### IV. STANDARD OF REVIEW

If the jury instructions taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987).

A motion for new trial should be granted only where there is error prejudicial to the rights of an unsuccessful party. Unless such error appears, a party who has sustained the burden and expense of trial, and who has succeeded in securing a verdict on the facts in issue, has a right to keep the benefit of that verdict. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990).

An appellate court will find a damage award clearly inadequate only if it is so clearly against the weight and reasonableness of the evidence and so disproportionate to the injury proved as to indicate that it was the result of passion, prejudice, mistake, or some other means not apparent in the record, or that the jury disregarded the evidence or rules of law. *Bay v. House*, 226 Neb. 521, 412 N.W.2d 466 (1987).

Judicial abuse of discretion means that the reasons or rulings of the trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Thomas*, 238 Neb. 4, 468 N.W.2d 607 (1991).

When there is neither prejudice nor abuse of discretion in denying a motion for new trial, the decision will be affirmed. *Schuster v. Baumfalk*, 229 Neb. 785, 429 N.W.2d 339 (1988).

## V. ANALYSIS

### 1. ASSUMPTION OF RISK

In 1992, the Nebraska Legislature codified the following definition of assumption of risk:

> Assumption of risk shall mean that (1) the person knew of and understood the specific danger, (2) the person voluntarily exposed himself or herself to the danger, and (3) the person's injury or death or the harm to property occurred as a result of his or her exposure to the danger.

Neb. Rev. Stat. § 25-21,185.12 (Cum. Supp. 1992). The definition became effective upon approval by the Governor February 8, 1992, but it applies only to civil actions that accrued on or after that date. Murrish's cause of action accrued on August 2, 1986. Thus, the definition of assumption of risk applicable to the case now before us is the one in force in August 1986: One who knows of a dangerous condition, appreciates its dangerous nature, and deliberately exposes himself or herself to the danger assumes the risk of injury from it. See *Kliewer v. Wall Constr. Co.*, 229 Neb. 867, 429 N.W.2d 373 (1988).

The night of August 2 was not the first occasion on which Murrish had been four wheeling with Burkey. Murrish was aware that a Jeep traveling off the road could encounter bumps and ruts. Burkey testified that everybody in the Jeep was "laughing and screaming," enjoying the four wheeling and hill climbing until the accident occurred. Shortly after the accident, Murrish signed a statement saying she had wanted to go hill climbing. Thus, there was evidence in the record that could have supported a finding by the jury that Murrish knew of the dangerous condition (riding in the open rear compartment of a Jeep on bumpy, rutted terrain), appreciated the dangerous nature of four wheeling, and deliberately exposed herself to that danger. The instruction on assumption of risk was a correct statement of law, and it did not mislead the jury. Therefore, the court did not err in giving the instruction.

## 2. CREDIT FOR ADVANCE PAYMENTS

The Jeep driven by Burkey was owned by Lyle Frey and insured by General Casualty Companies. Though General Casualty denied liability for Murrish's injury due to her alleged assumption of risk, before trial the insurer sent Murrish a check for $5,000 pursuant to the medical payments coverage provision of the policy. Murrish cites case law from other jurisdictions for the proposition that a medical payments coverage provision constitutes a contractual arrangement distinct from liability coverage and that, consequently, any payments for medical coverage should be treated independently of payments or damages related to liability in tort.

On this issue, we are bound by § 25-1222.01, which provides in relevant part:

> No advance payments . . . made by an insurance company . . . under any liability insurance policy . . . because of an injury . . . or potential claim against any insured . . . shall be construed as an admission of liability . . . . *Any such payments* shall constitute a credit and be deductible from any final settlement made or judgment rendered . . . .

(Emphasis supplied.) Words in a statute should be given their ordinary meaning. *State Bd. of Ag. v. State Racing Comm.*, 239 Neb. 762, 478 N.W.2d 270 (1992). An appellate court must not read *out* of a statute anything plain, direct, and unambiguous. *Matrisciano v. Board of Ed. of Sch. Dist. No. 6*, 236 Neb. 133, 459 N.W.2d 230 (1990). Under Neb. Rev. Stat. § 44-514(2) (Reissue 1988), medical payments are included as part of automobile liability coverage "unless the context otherwise requires." Though Frey's insurance policy on the Jeep is not included in the record, the essential terms are contained in a stipulation. We presume the medical payments coverage provision pursuant to which General Casualty provided the $5,000 check was part of the overall liability coverage for the Jeep. Therefore, we find that the advance payment to Murrish made by General Casualty was the type of payment described in § 25-1222.01, and the court properly deducted the amount of the advance payment from the damages awarded.

### 3. ADDITUR

"[T]here is no rule in [Nebraska] permitting an additur." *Kearney Conv'n Center v. Anderson-Divan-Cottrell Ins.*, 220 Neb. 319, 323, 370 N.W.2d 86, 89 (1985). Therefore, the court did not err in overruling the motion for additur.

### 4. NEW TRIAL

On this issue, the controlling case is *O'Neil v. Behrendt*, 212 Neb. 372, 322 N.W.2d 790 (1982), involving a plaintiff who had been a passenger in a car struck by the defendant's car. Both parties in *O'Neil* stipulated that a medical expert would have testified that the plaintiff's fair and reasonable medical expenses as a result of the accident were $1,641.18. The plaintiff appealed as clearly inadequate the jury's verdict awarding the plaintiff $1,000. The plaintiff assigned as error the trial court's refusal to instruct the jury that any negligence on the part of the driver of the car in which the plaintiff was a passenger could not be charged to the plaintiff. The defendant, like Burkey in the case now before us, argued that the figures for medical expenses in the stipulation were no more binding on the jury than they would have been if they had been presented by an expert witness in person. The Nebraska Supreme Court agreed, but pointed out that the stipulated medical expenses were "undisputed, and that fact may be considered in determining whether or not the verdict was inadequate." *Id.* at 377, 322 N.W.2d at 793. The court concluded that

> in returning the verdict that it did, the jury felt sorry for the defendant in view of the facts of the accident which perhaps indicated a higher degree of negligence on the part of the plaintiff's host. In other words, the verdict smacks of a compromise effected by the unwarranted placing of some of the burden for the host's negligence on the plaintiff.

*Id.* at 378, 322 N.W.2d at 793. Characterizing the jury's compromise as a misapplication of the law, the court reversed the order overruling the plaintiff's motion for new trial and remanded the cause for a new trial for determining damages only.

In the case at bar, we are not presented with either an error in

jury instruction or a problem of third-party negligence imputed to the plaintiff. However, we are presented with an analogous problem of a jury disregarding evidence and rules of law in reaching its verdict.

The trial court very clearly laid out the either/or nature of the assumption of risk issue: Either the defendant has succeeded in proving assumption of risk and you must find in his favor, or the defendant has failed and you must disregard assumption of risk. The jury instruction left no room for compromise. However, the record indicates that the jury made the same sort of compromise that was rejected in *O'Neil*.

We are not concerned with Murrish's arguments regarding damages for pain and suffering. The jury's deliberations over whether to award damages for the alleged emotional trauma of wearing casts for 6 months and bearing a permanent surgical scar were subjective in nature. We are, instead, concerned with the jury's refusal to award damages for the total medical expenses incurred as a direct result of the injury.

While it is true that the jury was not bound by the stipulation as to medical expenses, there was nothing subjective about the figures in the stipulation. The figures for the hospital stay, the surgeon, the anesthesiologist, the radiologist, and the physical therapy represented the actual bills for supplies and services. Those bills were received into evidence as exhibits 3 through 7. The exhibits are undisputed, objective evidence of Murrish's medical expenses related to her injury.

There was no question of proximate cause in this case. Murrish's arm was fine until the injury. The surgeries, anesthesia, x rays, and physical therapy all were direct results of the injury. Furthermore, the medical expenses were related to an injury that was not psychiatric or otherwise difficult to ascertain. The record clearly shows that Murrish's right arm was broken, treated, and rehabilitated. Once the jury had ruled out assumption of risk as a defense, it was bound to disregard that theory. Thus, it simply was not possible to find that Burkey was liable for Murrish's injury, but not liable for all of the undisputed medical expenses related to the injury.

In effect, the jury determined that Burkey was liable for the bill for the hospital room, but not liable for the bill for the

surgeon who put Murrish's arm back together. That is nonsensical. If Burkey was liable for the injury, then he certainly was liable for the services of the surgeon who treated the injury. The same rationale applies to the other stipulated medical expenses. Instead, the jury crafted the sort of arbitrary compromise rejected by the Nebraska Supreme Court in *O'Neil.*

We conclude that the jury disregarded evidence and rules of law in reaching its verdict. Therefore, the trial court erred by not setting aside the verdict and granting Murrish's motion for a new trial on the issue of damages. We reverse the judgment of the district court and remand the cause for a new trial on the issue of the amount of damages only.

REVERSED AND REMANDED FOR A NEW TRIAL
ON THE ISSUE OF DAMAGES.