MARTIN F. REISER, PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES L. REISER, DECEASED, APPELLANT, V. DOUGLAS R. COBURN, APPELLEE.

587 N.W.2d 336

Filed December 4, 1998.    No. S-97-631.

E. Terry Sibbernsen and Mandy L. Strigenz, of E. Terry Sibbernsen, P.C., for appellant.

David D. Ernst and Jeffrey J. Huber, of Gaines, Mullen, Pansing & Hogan, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

James L. Reiser died at the age of 18 as a result of injuries he sustained when the vehicle he was operating collided with a vehicle operated by Douglas R. Coburn at the intersection of two county roads in rural Boyd County, Nebraska. James Reiser's father, Martin F. Reiser, as personal representative of his son's estate, brought this action against Coburn, alleging that Coburn's negligence caused the accident and the death of James Reiser. Following trial, a jury found that Coburn was 50.1 percent negligent, that James Reiser was 49.9 percent negligent, and that James Reiser's estate sustained total damages in the amount of $17,000. The court reduced this award by the per-

centage of James Reiser's negligence as determined by the jury, which resulted in a judgment of $8,517. In this appeal, Martin Reiser does not challenge the determination of comparative negligence but contends that the district court erred in not granting his motion for a new trial on the issue of damages because the amount of the verdicts was clearly inadequate. We agree and therefore reverse, and remand for a new trial on the issue of damages only.

## FACTS

On September 19, 1994, at approximately 6:30 p.m., James Reiser was driving a 1952 Chevrolet pickup north on a county road 5 miles west of Spencer, Nebraska. On the same date and at the same time, Coburn was driving a 1994 Ford pickup east on a county road also located about 5 miles west of Spencer, Nebraska. The two pickups collided at an unmarked intersection.

After receiving medical attention at the accident scene, James Reiser was transported to Niobrara Valley Hospital in Lynch, Nebraska. Upon his arrival there, he was generally unresponsive, although he occasionally squeezed the hand of a nurse when asked to do so. Approximately 1½ hours after his arrival at the hospital in Lynch, James Reiser was transported by helicopter to Marian Health Center in Sioux City, Iowa. He was unconscious upon arrival. While hospitalized in Sioux City, James Reiser underwent surgery to remove a blood clot from his brain. However, he never regained consciousness, and on September 21, 1994, he died from the injuries sustained in the accident.

In his capacity as personal representative, Martin Reiser commenced this action against Coburn. In his first cause of action, he sought damages on behalf of James Reiser's parents for loss of consortium, services, society, companionship, and counsel resulting from the death of their son. In his second cause of action, Martin Reiser claimed damages on behalf of the estate for pain and suffering experienced by James Reiser before his death, medical expenses, and funeral and burial expenses. Coburn filed an answer, denying that he was negligent and alleging that James Reiser was contributorily negligent.

The case was tried to a jury on January 27 through 29, 1997. On a special verdict form, the jury awarded total damages of $0

on the first cause of action and $17,000 on the second cause of action, which the court then reduced to $8,517 in accordance with the jury's finding of comparative negligence. Martin Reiser filed a motion for a new trial on various grounds, including the inadequacy of the verdict on each cause of action. The motion was overruled, and Martin Reiser then perfected this appeal, which we removed to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Martin Reiser contends that the district court erred in not granting a new trial because of the inadequacy of damages awarded on both of his causes of action.

## STANDARD OF REVIEW

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 580 N.W.2d 86 (1998); *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998).

Where the amount of damages allowed by a jury is clearly inadequate under the evidence, it is error for the trial court to refuse to set the verdict aside. *Sanwick v. Jenson*, 244 Neb. 607, 508 N.W.2d 267 (1993). The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved. *World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996); *Bristol v. Rasmussen*, 249 Neb. 854, 547 N.W.2d 120 (1996).

## ANALYSIS

We begin by noting that although this case was tried before our decision in *Wheeler v. Bagley*, 254 Neb. 232, 575 N.W.2d 616 (1998), the comparative negligence instruction given by the trial court was consistent with our holding in that case. No error is assigned with respect to the determination of comparative negligence, and thus the only issues we address in this appeal are whether the verdicts on both causes of action were inadequate as a matter of law.

Neb. Rev. Stat. §§ 30-809 and 30-810 (Reissue 1995) author-
ize a personal representative to bring a civil action on behalf of
the surviving spouse or next of kin for damages they have sus-
tained as a result of the decedent's death caused by another per-
son. In this context, "next of kin" means those persons nearest
in degree of blood surviving the decedent, who ordinarily are
"those persons who take the personal estate of the deceased
under the statutes of distribution." *Mabe v. Gross*, 167 Neb. 593,
596, 94 N.W.2d 12, 15 (1959). Prior to 1973, we construed
these statutes to provide that the only measure of damages
which surviving parents could recover for the wrongful death of
a child was the pecuniary loss which the parents sustained by
reason of being deprived of the child's services during his or her
minority and the loss of contributions that might reasonably be
expected to be made after reaching majority. See *Dorsey v. Yost*,
151 Neb. 66, 36 N.W.2d 574 (1949). See, also, *Crewdson v.
Burlington Northern RR. Co.*, 234 Neb. 631, 452 N.W.2d 270
(1990).

In *Selders v. Armentrout*, 190 Neb. 275, 207 N.W.2d 686
(1973), we held for the first time that surviving parents could
also recover for the monetary value of the loss of society, com-
fort, and companionship of their deceased child. A separate
action on behalf of the decedent's estate for conscious pain and
suffering experienced before death, medical expenses, and
funeral and burial expenses may be joined as a separate cause
of action in an action for wrongful death. *Brandon v. County of
Richardson*, 252 Neb. 839, 566 N.W.2d 776 (1997); *Nelson v.
Dolan*, 230 Neb. 848, 434 N.W.2d 25 (1989); *Rhein v.
Caterpillar Tractor Co.*, 210 Neb. 321, 314 N.W.2d 19 (1982).
In this case, the jury was instructed that it could consider dam-
ages for the parents' loss of society, comfort, and companion-
ship under the first cause of action and damages for conscious
pain and suffering prior to death, medical expenses, and burial
and funeral expenses under the second cause of action.

## FIRST CAUSE OF ACTION: ADEQUACY OF DAMAGES FOR LOSS OF SOCIETY, COMFORT, AND COMPANIONSHIP

A plaintiff in a wrongful death case can recover damages
only for loss of the deceased's society, comfort, and compan-

ionship which are shown by the evidence to have a pecuniary value. *Garvin v. Coover*, 202 Neb. 582, 276 N.W.2d 225 (1979). See *Crewdson, supra.* However, we have recognized that in this context,

> the word "pecuniary" is not to be construed in a strict sense, that it is difficult to determine its exact measure, and that the task of determining such must be left to the good judgment and ordinary common sense of the jurors. The law does not provide any positive, definite mathematical formula or legal rule by which a jury shall fix the amount of pecuniary loss; it must be determined upon a consideration of the circumstances of each case. [Citations omitted.] There is no requirement that there be evidence of the dollar value of companionship, counseling, or advice.

*Maloney v. Kaminski*, 220 Neb. 55, 69, 368 N.W.2d 447, 458 (1985) (affirming verdict of approximately $59,000 to elderly widow for loss of her husband's society and companionship). No recovery is allowed for mental suffering or bereavement or as solace on account of the death. *Garvin v. Coover, supra.*

In *Garvin*, we affirmed a verdict of $0 in general damages in an action for the wrongful death of a 20-year-old unmarried woman. Her parents testified that she had been a bright and loving child who had graduated from high school and was studying to become a nurse at the time of her death. *Id.* She attended church with them, and they took comfort in her attitude toward school, her interest in sewing and music, and her interest in sports. *Id.* In considering whether the verdict should be set aside on appeal, we framed the question as

> whether there was such a reasonable expectation of monetary contributions on Linda's part and a monetary worth which can reasonably be assigned to the loss of her society, comfort, and companionship that we can say the verdict of "none" was so inadequate as to be contrary to the evidence and therefore wrong as a matter of law.

*Id.* at 586, 276 N.W.2d at 227. In answering that question, we noted that "[i]t is virtually impossible to 'color match' cases" to determine whether a verdict in a particular case was adequate. *Id.* After reviewing other cases involving actions for wrongful death of a child, we observed that "one common thread runs

throughout all of those cases, namely, that damages in any wrongful death case are incapable of computation and are largely a matter for the jury." *Id.* We referred to our decision in *Selders v. Armentrout*, 192 Neb. 291, 220 N.W.2d 222 (1974), in which we affirmed verdicts of $1,500 each for the deaths of three children, ages 15, 13, and 9, upon a finding that the evidence was "such that the jury could have concluded the pecuniary loss to the parents, including the value of society and companionship, was relatively small." *Id.* at 293, 220 N.W.2d at 224, quoted in *Garvin, supra.* In *Garvin*, 202 Neb. at 587, 276 N.W.2d at 228, we noted that the case was fairly tried and submitted to the jury under proper instructions, and concluded that we were "not inclined to disturb its verdict."

Two cases decided by this court since *Garvin* provide further guidance in evaluating the adequacy or excessiveness of a verdict awarded as the result of the wrongful death of unmarried young adults. In *Crewdson v. Burlington Northern RR. Co.*, 234 Neb. 631, 452 N.W.2d 270 (1990), we considered a challenge to a verdict in the amount of $510,000 awarded to parents for the loss of their 21-year-old son, who was killed by a train. We noted that a jury verdict may be set aside when it is so clearly wrong and unreasonable as to indicate passion, prejudice, or mistake. Additionally, we stated that passion or prejudice is shown when the verdict "shocks the conscience." *Id.* at 643, 452 N.W.2d at 280. Thus, "[i]f a verdict shocks the conscience, it necessarily follows that the verdict was the result of passion, prejudice, mistake, or some other means not apparent in the record." *Id.* In *Crewdson*, the evidence established that prior to his death, the deceased lived with his parents and did not contribute to his living expenses. He worked part time and did chores around the house, including taking care of the dogs, shoveling snow, mowing, and taking out the garbage. He was engaged to be married. Based upon this evidence, we found that the verdict of $510,000 for the parents' loss of their son's society, comfort, and companionship shocked the conscience and was clearly excessive, necessitating a new trial on the issue of damages.

The second case, *Williams v. Monarch Transp.*, 238 Neb. 354, 470 N.W.2d 751 (1991), involved the death of an unmarried

24-year-old woman in a motor vehicle accident. The deceased lived with her parents until a year before the accident and visited her parents almost daily, often staying for dinner and even overnight. She attended church each Sunday with her parents and shopped most weekends with her mother. Her mother referred to the deceased as her " 'best friend.' " *Id.* at 357, 470 N.W.2d at 754. The jury returned a verdict which included $250,000 for the parents' loss of the society, comfort, and companionship of their daughter. We held that this verdict was not excessive in view of the uncontroverted evidence regarding the close and loving relationship which had existed between the deceased and her parents. In reaching this conclusion, we noted " '[w]hen children are wrongfully killed, the parents' investment of money and in affection, guidance, security and love is destroyed. Society recognizes the destruction of that value, whether the child is a minor or an adult.' " *Id.* at 359, 470 N.W.2d at 755, quoting *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 499 N.E.2d 1373 (1986). We further noted:

> "The term 'society' embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection." *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 585, 94 S. Ct. 806, 39 L. Ed. 2d 9 (1974) (wrongful death action). Accord, *Singh v. Air Illinois, Inc.*, 165 Ill. App. 3d 923, 520 N.E.2d 852 (1988); 1 S. Speiser, Recovery for Wrongful Death § 3:49 (2d ed. 1975). "[T]here is a growing appreciation of the true value to the parent of the rewards which flow from the family relationship and are manifested in acts of material aid, comfort, and assistance . . . ." *Fussner v. Andert*, 261 Minn. 347, 353, 113 N.W.2d 355, 359 (1961).

*Williams*, 238 Neb. at 359, 470 N.W.2d at 755. In *Williams*, 238 Neb. at 359-60, 470 N.W.2d at 755, we also quoted the following observation of the Supreme Court of Michigan in *Wycko v. Gnodtke*, 361 Mich. 331, 105 N.W.2d 118 (1960):

> "What, then, is the pecuniary loss suffered because of the taking of the child's life? It is the pecuniary value of the life. . . .

". . .[A]n individual member of a family has a value to others as part of a functioning social and economic unit. This value is the value of mutual society and protection, in a word, companionship. The human companionship thus afforded has a definite, substantial, and ascertainable pecuniary value and its loss forms a part of the 'value' of the life we seek to ascertain."

Based upon these principles, we stated in *Williams* that "in an action for wrongful death of a child, 'money value' of parental loss is not limited to, always equated with, or necessarily dependent on deprivation of the child's monetary contribution toward parental well-being." 238 Neb. at 360, 470 N.W.2d at 756. We further stated that

there is no exact fiscal formula for determination of damages recoverable for loss of society, comfort, and companionship, a loss which is not subject to some strict accounting method based on monetary contributions, past or prospective. Rather, "the society, care and attention of a deceased [family member] are 'services' having financial value which may be both measured and compensated."

*Id.* at 361-62, 470 N.W.2d at 756.

In the present case, there is uncontroverted evidence of a close and loving relationship between James Reiser and his parents. James Reiser was engaged in farming with his father, who described him as his "right-hand man." Martin Reiser testified that his son was with him all the time and helped him with everything that needed to be done on the farm. He described him as an "honest and loving kid" with whom he had a "real good" relationship. Since graduating from high school several months before his death, James Reiser lived by himself in a farmhouse owned by his grandparents which was located near his parents' farm. The family often gathered at his home for Sunday dinner. James Reiser regularly went to church and engaged in recreational activities with his parents and younger siblings. His mother testified that she thought of the loss of her son every day. When asked to describe what it meant not to have his son with him, Martin Reiser stated: "It was a shock and devastating. I think about it, you know, every time I go to the other

place, you know, what we could be doing . . . ." The parties stipulated that the surviving parents had life expectancies of 39.74 and 34.51 years.

We acknowledge the factual parallel between this case and *Garvin v. Coover*, 202 Neb. 582, 276 N.W.2d 225 (1979), decided almost 20 years ago. Nevertheless, mindful of the characteristics and intrinsic value of the relationship between parent and child which we examined and applied in *Williams v. Monarch Transp.*, 238 Neb. 354, 470 N.W.2d 751 (1991), and applying the same test which we used in reviewing the verdict in *Crewdson v. Burlington Northern RR. Co.*, 234 Neb. 631, 452 N.W.2d 270 (1990), we conclude that a verdict of $0 for the loss of the deceased's society, comfort, and companionship sustained by his parents as the result of his death bears no reasonable relationship to the evidence and shocks the conscience. The verdict on the first cause of action is therefore inadequate as a matter of law.

### SECOND CAUSE OF ACTION: ADEQUACY OF DAMAGES FOR PAIN AND SUFFERING, MEDICAL EXPENSES, AND FUNERAL AND BURIAL EXPENSES

In his second cause of action, Martin Reiser sought damages for pain and suffering experienced by the deceased before his death, as well as medical expenses and funeral and burial expenses. There is conflicting evidence as to whether James Reiser experienced conscious pain and suffering between the time of the accident and his death, and the jury could have reasonably concluded that the evidence did not sustain this element of damage.

During trial, the parties stipulated that medical and funeral bills in the total amount of $33,747.72 were "necessitated as a result of the accident which occurred on September 19, 1994, which resulted in the death of James Reiser." These expenses were itemized in an exhibit which was received in evidence. It is true that a jury is not bound by a stipulation of the parties. See *O'Neil v. Behrendt*, 212 Neb. 372, 322 N.W.2d 790 (1982). However, when stipulated expenses are undisputed, "that fact may be considered in determining whether or not the verdict was inadequate." *Id.* at 377, 322 N.W.2d at 793. In this case, the

stipulated expenses were incorporated into a jury instruction to which neither party objected. The jury was instructed that the reasonable value of funeral and burial expenses incurred by the estate was $6,880.75 and that the reasonable value of medical care provided to the deceased was $26,523.97.

We have held verdicts in personal injury cases to be inadequate as a matter of law where the amount was in irreconcilable conflict with stipulated or uncontested damages. See, *O'Neil v. Behrendt, supra* (holding that verdict of $1,000 was inadequate where special damages for medical expenses were stipulated in amount of $1,641.18); *Webster v. Halbridge*, 185 Neb. 409, 176 N.W.2d 8 (1970) (involving verdict of $1,600 where there was evidence of special damages of approximately $2,000, plus evidence of pain and permanent scarring); *Bohn v. Kruger*, 185 Neb. 407, 176 N.W.2d 14 (1970) (holding verdict inadequate when stipulated medical expenses were $3,194.99 and verdict was in same amount notwithstanding evidence of additional uncontested damages). In *Murrish v. Burkey*, 1 Neb. App. 650, 510 N.W.2d 366 (1993), the Court of Appeals relied on *O'Neil, supra*, in finding a verdict in the amount of stipulated hospital expenses to be inadequate in view of other stipulated special damages for physicians' fees. The court concluded that it was simply not possible to find that the defendant was liable for the plaintiff's injury but not liable for all of the undisputed medical expenses relating to the injury. *Id.*

The same reasoning applies in the present case. We need not speculate why the jury awarded a verdict on the second cause of action in the amount of approximately 50 percent of the stipulated damages. It is sufficient to conclude, as we do, that there is no logical correlation between the stipulated and uncontroverted evidence regarding medical expenses and funeral and burial expenses incorporated in the trial court's instruction and the amount of the verdict returned by the jury on the second cause of action. The verdict is therefore inadequate as a matter of law.

## CONCLUSION

For the reasons discussed, we determine that the verdicts returned by the jury on both causes of action are inadequate as

a matter of law and that the district court abused its discretion in overruling the motion for new trial on this ground. This does not, however, require retrial on the issue of liability. As noted previously, the present case is distinguishable from *Wheeler v. Bagley*, 254 Neb. 232, 575 N.W.2d 616 (1998), in which the jury was not properly instructed on the effect of the allocation of negligence as required by Neb. Rev. Stat. § 25-21,185.09 (Reissue 1995). In this case, the jury was properly instructed on that point, and the issue of liability need not be revisited on remand.

We therefore reverse, and remand for a new trial on the issue of damages only. On retrial, the jury should be instructed to determine the total amount of damages without regard to any negligence on the part of James Reiser and then reduce such damages by 49.9 percent, representing the percentage of negligence attributable to James Reiser as determined in the first trial.

REVERSED AND REMANDED FOR A NEW
TRIAL ON THE ISSUE OF DAMAGES.