JoAnn Brandon, Personal Representative of the Estate
of Teena Brandon, deceased, appellant, v. The County
of Richardson, Nebraska, and Charles B. Laux,
Richardson County Sheriff, appellees.

653 N.W.2d 829

Filed December 6, 2002. No. S-01-1158.

Herbert J. Friedman, of Friedman Law Offices, David S. Buckel, of Lambda Legal Defense and Education Fund, Inc., and John Stevens Berry, of Berry, Kelley & Reiman, for appellant.

Richard L. Boucher and Kim K. Sturzenegger, of Boucher Law Firm, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

JoAnn Brandon (JoAnn) appeals from the judgment of the district court awarding damages in the amount of $98,223.20 for negligence, wrongful death, and intentional infliction of emotional distress in connection with the murder of JoAnn's daughter Teena Brandon (Brandon) and the events leading up to Brandon's death. JoAnn contends that the damages awarded by the district court are insufficient and constitute clear error.

## BACKGROUND

On December 31, 1993, Brandon, Lisa Lambert, and Phillip Devine were found murdered in Lambert's rural Humboldt farmhouse in Richardson County, Nebraska. John L. Lotter and Thomas M. Nissen, also known as Marvin T. Nissen, were convicted of the murders. See *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), and *State v. Nissen*, 252 Neb. 51, 560

N.W.2d 157 (1997). JoAnn brought an action against Richardson County and Sheriff Charles B. Laux for negligence, wrongful death, and intentional infliction of emotional distress in connection with Brandon's murder and the events leading up to her death. JoAnn also brought a civil rights action against Lotter, Nissen, and Laux in federal court; the federal court dismissed the claims against Laux. See *Brandon v. Lotter*, 976 F. Supp. 872 (D. Neb. 1997), *affirmed* 157 F.3d 537 (8th Cir. 1998).

In the state court case, the district court dismissed JoAnn's second amended petition based on the defendants' demurrer alleging that the petition did not state a cause of action. We reversed that determination. See *Brandon v. County of Richardson*, 252 Neb. 839, 566 N.W.2d 776 (1997) (*Brandon I*). The case proceeded to trial. See *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001) (*Brandon II*). The evidence adduced at the trial is summarized in *Brandon II* and will not be repeated here. The district court found the county negligent and awarded economic damages (funeral expenses) of $6,223.20 and noneconomic damages of $80,000. However, the district court reduced the damage award on the negligence claim by 85 percent for the intentional torts of Lotter and Nissen, and by 1 percent for the negligence of Brandon. The district court denied recovery on the intentional infliction of emotional distress claim and awarded "nominal damages" for loss of society, comfort, and companionship. See *id.* JoAnn appealed. We reversed the judgment of the district court and remanded the cause, stating as follows:

> We affirm the district court's determination that the county had a duty to protect Brandon, its finding that the county was negligent in failing to discharge that duty, and its finding that Brandon suffered predeath pain and suffering damages in the amount of $80,000.
>
> We reverse the district court's allocation of 85 percent of the predeath pain and suffering damages to the intentional torts of Lotter and Nissen as Nebraska's comparative negligence law does not allow for allocation of damages to the acts of intentional tort-feasors. We also reverse the district court's determination that Laux's conduct during the December 25, 1993, interview was not extreme and outrageous. We further reverse the district court's award of

"nominal damages" for loss of society, comfort, and companionship and its finding that Brandon was 1 percent contributorily negligent.

We therefore remand this cause to the district court (1) for a determination of whether JoAnn has proved that Brandon suffered emotional distress so severe that no reasonable person should be expected to endure it and, if so, whether Laux's conduct was a proximate cause of any such distress; (2) to award damages for intentional infliction of emotional distress if JoAnn has proved both that Brandon suffered severe emotional distress and that Laux's conduct was a proximate cause of that distress; and (3) for a determination of the amount of damages for loss of society.

Upon remand, the district court shall not reduce the award of $80,000 for Brandon's predeath pain and suffering or reduce any additional amounts that may be awarded for loss of society or intentional infliction of emotional distress by allocating a percentage of the damage to intentional acts on the part of Lotter and Nissen. Further, as there is no evidence to support a finding of negligence on the part of Brandon, the district court shall not reduce any damages awarded to JoAnn due to any acts of Brandon.

*Brandon II*, 261 Neb. at 670-71, 624 N.W.2d at 629.

After remand, the district court made additional factual findings based upon the record from the previous trial. The district court found damages for JoAnn in the amount of $7,000 on the claim of intentional infliction of emotional distress. The district court examined the evidence regarding loss of society and determined, in essence, that the testimony offered by Brandon's family regarding their relationship with her was not consistent with their conduct during the undisputed sequence of events that preceded Brandon's death. The district court awarded damages for loss of society in the amount of $5,000. The district court added these awards to the damages awarded at the previous trial and entered judgment in the amount of $98,223.20. JoAnn appeals.

## ASSIGNMENTS OF ERROR

JoAnn assigns that the district court erred in finding (1) on the wrongful death claim, that JoAnn's loss of society, comfort,

and companionship amounted to $5,000 in damages and (2) on the intentional infliction of emotional distress claim, that the severe emotional distress caused by Laux's extreme and outrageous conduct amounted to $7,000 in damages.

## STANDARD OF REVIEW

 The amount of damages to be awarded is a determination solely for the fact finder, and the fact finder's decision will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Suburban Air Freight v. Aust*, 262 Neb. 908, 636 N.W.2d 629 (2001). In an action brought pursuant to the Political Subdivisions Tort Claims Act, or in a bench trial of an action at law, the factual findings by the trial court will not be disturbed on appeal unless they are clearly wrong. *Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222 (2001).

## ANALYSIS

### LOSS OF SOCIETY

We turn first to JoAnn's argument that the award of $5,000 on the wrongful death claim, as damages for loss of society, was clearly wrong.

 This court has consistently recognized that in an action for wrongful death of a child, recoverable damages include parental loss of the child's society, comfort, and companionship. *Brandon II*, citing *Reiser v. Coburn*, 255 Neb. 655, 587 N.W.2d 336 (1998). The term "society" embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection. *Brandon II*. When a child is wrongfully killed, a parent's investment in that child of money, affection, guidance, security, and love is destroyed. *Id.*, citing *Reiser, supra*. Destruction of such value is recognized whether the child is a minor or an adult. *Id.* Parental loss is not limited to or necessarily dependent upon deprivation of the child's monetary contribution toward parental well-being. *Id.*

 Damages for loss of society must be determined upon a consideration of the facts of each case. *Id.* There is no exact fiscal formula for determination of damages recoverable for loss of

society, comfort, and companionship, a loss which is not subject to some strict accounting method based on monetary contributions, past or prospective. *Id.* Because it is impossible to generalize the extent to which persons enjoy each other's companionship and society, the value of such highly personal relationships must be decided on a case-by-case basis. *Brandon II.*

██ Because the parent-child relationship has intrinsic value, once a parent-child relationship is proved to exist, destruction of that relationship through the wrongful death of the child entitles the parent, who is the surviving next-of-kin, to damages. *Id.*, citing *Reiser, supra.* Evidence regarding the quality and extent of the parent-child relationship may then be utilized in determining the amount of those damages. *Id.*

██ In reversing the district court's first award of "nominal damages," we stated in *Brandon II,* 261 Neb. at 665-66, 624 N.W.2d at 626:

> JoAnn testified that she had a close relationship with Brandon. [Brandon's sister, Tammy] Schweitzer testified that she and Brandon had a close relationship with JoAnn because "we had nobody but each other." Brayman, Brandon's aunt, testified that Brandon "loved her mom dearly and she let her mother know that she loved her." Brandon spent every Christmas with her family.

> Although JoAnn often "didn't know what to say" when Brandon began experiencing her sexual identity crisis, JoAnn and Brandon did discuss the issue. JoAnn also attended counseling with Brandon. Even after Brandon began presenting herself as a man, Brandon would call JoAnn, stop by to see her, or leave a rose in the door for her. Brandon spoke to JoAnn nearly every day on the telephone after the rapes occurred. Brandon was interested in becoming a commercial artist, and Brandon told JoAnn that she wanted to come back to Lincoln and "get her life back."

> The record in the present case shows that a relationship between JoAnn and Brandon did indeed exist. The county does not assert that there was no relationship between JoAnn and Brandon. The county asserts that the award of "nominal damages" was reasonable because JoAnn's relationship with Brandon was "strained and undeveloped"

due to Brandon's legal troubles and gender identity disorder. Brief for appellee at 23. However, Brandon's personal problems are relevant only to the extent that they impacted her relationship with JoAnn. Damages for loss of society are not necessarily dependent on the personal qualities of the child. We have previously recognized that "[w]e will not enter into a discussion in which we compare the relative accomplishments of deceased children in wrongful death actions." *Caradori v. Fitch*, 200 Neb. 186, 194, 263 N.W.2d 649, 655 (1978). See, also, *Brahatcek v. Millard School District*, 202 Neb. 86, 273 N.W.2d 680 (1979).

The county's argument addresses the extent and quality of the relationship between JoAnn and Brandon, not whether such relationship existed. Contrary to the county's assertion, the parent-child relationship has intrinsic value, even if that relationship is less than perfect. A parent-child relationship may exist in spite of any personal problems the child might have, as the record in this case demonstrates. In recognizing the "intrinsic value of the relationship between parent and child," as we did in *Reiser v. Coburn*, 255 Neb. 655, 664, 587 N.W.2d 336, 342 (1998), we conclude that an award of $0 for the loss of Brandon's society, comfort, and companionship sustained by JoAnn as a result of Brandon's death bears no reasonable relationship to the evidence and shocks the conscience. The award of $0 on JoAnn's loss of society claim is therefore inadequate as a matter of law.

After remand, the district court attempted to calculate the intrinsic value of Brandon's relationship with her family. The district court acknowledged the facts set forth above and our holding in *Brandon II*. The district court relied on evidence that, according to the district court, demonstrated that while a parent-child relationship might have existed, "[n]o real society existed and there is no evidence or reason to believe in its future development."

The district court noted testimony indicating that Brandon had been sexually abused by an uncle starting when Brandon was about 6 or 7 years of age and continuing until Brandon was 14. The district court also noted that JoAnn later became aware of the sexual abuse, but nonetheless testified that Brandon had a

"happy" childhood. The district court contrasted Schweitzer's testimony that she and Brandon were "open with [their] mother" and " '[t]here was always honesty and trust between the three of us,' " with Schweitzer's admission that she had been sexually abused by the same uncle and that she had witnessed Brandon being sexually abused, but that Schweitzer and Brandon agreed not to say anything about it.

The district court also noted that while Brandon was afraid of Nissen and Lotter, "[t]here is plenty of evidence that [Brandon] chose not to go home in the face of her fear and danger." Brandon thought it would be safer to stay with Lambert than to return home. The district court observed that although Brandon had been raped on Christmas Eve, Brandon did not go to her family on Christmas Day, nor did any members of Brandon's family go to her. The district court generally found that prior to the rape, the relationship between Brandon and the members of her family had become strained and distrustful and that Brandon had isolated herself from her family.

Given our standard of review and the record with which we are presented, further recitation of which would serve no useful purpose, we cannot say the district court's determination of damages for loss of society was clearly wrong. An award of damages may be set aside as inadequate when, and not unless, it is so inadequate as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. See *Holden v. Wal-Mart Stores*, 259 Neb. 78, 608 N.W.2d 187 (2000). If an award of damages shocks the conscience, it necessarily follows that the award was the result of passion, prejudice, mistake, or some other means not apparent in the record. *Id.* On appeal, we give the fact finder's determination of damages great deference. *Norman v. Ogallala Pub. Sch. Dist.*, 259 Neb. 184, 609 N.W.2d 338 (2000).

While the district court concluded, as it was required to do, that the parent-child relationship in this case had intrinsic value, the district court examined the record and concluded that the objective evidence of " ' "love, affection, care, attention, companionship, comfort, and protection" ' " in that relationship did not necessarily match the testimony in that regard. See *Reiser v. Coburn*, 255 Neb. 655, 662, 587 N.W.2d 336, 341 (1998). While

this does not mean that there is no relationship for which compensation can be awarded, see *Brandon II*, it is certainly relevant to the amount of damages to be awarded, particularly given the lack of an " 'exact fiscal formula for determination of damages recoverable for loss of society, comfort, and companionship.' " *Reiser*, 255 Neb. at 663, 587 N.W.2d at 341. After a thorough review of the record, we conclude that the trier of fact in this case made a determination that is supported by competent evidence and is not clearly wrong.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The district court awarded $7,000 for Brandon's damages resulting from Laux's liability for intentional infliction of emotional distress. JoAnn alleges that these damages are insufficient and clearly wrong.

The district court acknowledged that Laux's conduct was intentional and so outrageous and extreme that it was intolerable and that Laux's conduct was itself "very strong" evidence of Brandon's mental suffering. See *Brandon II*. However, the district court relied on witnesses who saw or spoke to Brandon after her interview with Laux and testified regarding Brandon's apparent emotional state. Lana Tisdel testified that when Brandon came out of the room where Laux had interviewed Brandon, Brandon described Laux as a "fuckin' asshole" and was "[p]retty upset." Linda Gutierres testified that Brandon returned to Gutierres' house after the interview and generally described Brandon as being as upset and scared as Brandon had been before the interview. JoAnn spoke to Brandon on the telephone after the interview and testified, generally, that Brandon was scared of Laux and did not want to talk to him again, but that Brandon's fears were focused primarily on Lotter and Nissen.

In other words, the district court found that although Brandon was upset and afraid during the time between her interview with Laux and her death, Brandon's emotions were affected primarily by Nissen and Lotter and the mental anguish resulting from the rape and threat to her life. Laux's conduct, considered discretely by the district court, was not found to have caused substantial emotional distress.

In awarding damages for mental anguish, the fact finder must rely upon the totality of the circumstances surrounding the incident; the credibility of the evidence and the witnesses and the weight to be given all of these factors rest in the discretion of the fact finder. See *Woitalewicz v. Wyatt*, 229 Neb. 626, 428 N.W.2d 216 (1988). This court is reluctant to interfere with the judgment of the fact finder in awarding damages for mental anguish, where the law provides no precise measurement. See *Bishop v. Bockoven, Inc.*, 199 Neb. 613, 260 N.W.2d 488 (1977). In this case, the district court's award of damages bears a reasonable relation to the evidence and is not clearly wrong. Given the great deference that the fact finder's determination of damages is given on appeal, see *Norman v. Ogallala Pub. Sch. Dist.*, 259 Neb. 184, 609 N.W.2d 338 (2000), JoAnn's assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we conclude that the district court's determination of damages is supported by competent evidence and is not clearly wrong. The district court judgment, in the amount of $98,223.20, is affirmed.

AFFIRMED.