DEBRA J. HOLDEN, APPELLANT,
v. WAL-MART STORES, INC., APPELLEE.
608 N.W. 2d 187

Filed March 31, 2000.    No. S-98-994.

Tylor J. Petitt, of The Van Steenberg Firm, P.C., for appellant.

Philip M. Kelly, of Nichols, Douglas, Kelly, Meade, and Ostdiek, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, Debra J. Holden, fell after stepping in a hole in the parking lot of a store owned by the appellee, Wal-Mart Stores, Inc. Holden subsequently underwent knee replacement surgery and sustained medical bills of at least $25,000. During trial, Holden offered evidence of instances at other Wal-Mart stores involving falls due to the condition of the pavement in those stores' parking lots. The district court excluded the evidence on the basis that its probative value was outweighed by the potential for prejudice under Neb. Rev. Stat. § 27-403 (Reissue 1995).

Evidence at trial indicated that Holden had a preexisting knee condition but that the fall might have aggravated it. A jury found Wal-Mart to be 60 percent negligent and Holden to be 40 percent negligent, awarding damages in the amount of $6,000. When reduced by Holden's negligence, the damages amounted to $3,600. Holden appeals, contending that the district court erred in refusing to allow her to present evidence of similar falls occurring at other Wal-Mart stores and that the amount of damages was inadequate.

We conclude that Holden failed to show how falls at other locations were substantially similar to her fall and that the damages awarded by the jury were supported by the record.

## BACKGROUND

In July 1992, Holden was injured after she fell in the parking lot of a Wal-Mart in Scottsbluff, Nebraska. Prior to the fall, Holden had been issued a handicapped parking permit dated June 2, 1992, because prior problems with her knees and feet made it difficult for her to walk distances. On the day of the fall, Holden parked in a handicapped parking space at Wal-Mart. When she pulled into the stall, she did not notice any holes in the surface of the parking lot. After she got out of her van and was walking toward the rear of it, she fell and experienced immediate pain, the worst of which was in her right knee. After she composed herself, she saw that the cause of the fall was that

her foot had twisted in a hole. Following the fall, Holden went to the emergency room. Holden subsequently underwent knee replacement surgery and brought the instant action against Wal-Mart seeking damages.

In her operative petition, Holden alleged that Wal-Mart was negligent because it failed to properly maintain the parking lot, failed to adequately inspect the premises, failed to repair the hole, and failed to warn her of the condition. Wal-Mart denied the allegations and alleged that any dangerous condition in the parking lot was open and obvious, that Holden was contributorily negligent, and that she assumed the risk of injuries.

Prior to trial, Wal-Mart filed a motion in limine seeking an order prohibiting Holden from presenting evidence concerning other parking lot slip-and-fall incidents at other Wal-Mart stores. In the motion, Wal-Mart alleged that such evidence was not relevant and that any probative value was substantially outweighed by the danger of unfair prejudice or was otherwise in violation of § 27-403. The district court concluded that the relevance of such evidence was substantially outweighed by the danger of unfair prejudice and confusion of issues and sustained the motion.

## TRIAL

During trial, the jury saw photographs of the hole that Holden had stepped in. The photographs showed a crack in the surface of the parking lot, along with a hole. A witness to the accident stated that the hole was large enough for Holden's foot to fit in. Holden's mother, also a witness to the accident, described the hole as being difficult to see. Holden presented several witnesses who testified that the hole was a pothole, that such a hole would take some time to develop, that it posed a risk, and that a retailer such as Wal-Mart had a responsibility either to repair it or to warn customers about it.

Following this evidence, Holden sought to introduce into evidence exhibit 67, which consisted of 84 reports of instances involving falls in the parking lots of other Wal-Mart stores. Holden sought to introduce the exhibit to show notice that holes in pavement need to be taken care of and argued that the exhibit was relevant to show notice and danger. Wal-Mart objected on

the basis that there was nothing to show that the instances were similar due to differences in items such as the parking lot surfaces and the times of day when the falls occurred. The district court sustained Wal-Mart's objection.

Witnesses for Wal-Mart testified that the hole was not a hazard or danger. A street superintendent with experience in asphalt paving testified that the hole was not a pothole. An engineer also testified as an expert regarding asphalt repairs and maintenance. The engineer testified that in his opinion, the crack did not constitute a pothole and was not a hazard, and that upon inspection, he would not have recommended that the area required immediate attention.

Following this testimony, Holden again sought to introduce exhibit 67. As an offer of proof, Holden provided the engineer's deposition in which he stated that same or similar incidents would be relevant to him to determine whether or not the parking lot at issue was safe, whether the rules and protocols of the store were working, and whether something else needed to be done. The district court refused to admit the exhibit.

The manager of the Wal-Mart where Holden fell testified regarding the safety procedures followed at the store. He also testified that he did not believe the crack in the parking lot was a hazard and that it did not constitute a pothole. Following his testimony, Holden again offered exhibit 67. Holden argued that the exhibit was necessary to impeach the manager's definition of a pothole because that definition was inconsistent with what Wal-Mart referred to as a "pothole" at other stores. The district court excluded the evidence.

Holden testified that she had noticed cracks, dips, and depressions in the Wal-Mart parking lot prior to July 1992. She further testified that on the day she fell, she did not expect the surface of the lot to be smooth, that nothing was present to prevent her from seeing the hole, and that she had had plenty of opportunity to observe the condition of the lot.

## PRIOR MEDICAL HISTORY

Because Holden has asserted that the damages awarded by the jury were inadequate, we set out the evidence presented at trial concerning her past medical history. At the time of trial,

Holden was 35 years of age. She had previously injured her right knee in 1976 as a result of an accident at her school. As a result, she underwent surgery to repair the knee. Following the surgery, Holden was able to resume sporting activities and worked for a period of years.

The record reflects that in April 1992, Holden saw Dr. Diane E. Gilles, an orthopedic surgeon. At that time, Holden told Gilles that she had experienced problems with her right knee since she was in seventh grade and that it had gotten worse since then. She also indicated to Gilles that she was recently involved in an accident involving an exercise bike. Gilles noted in her report that Holden was markedly overweight and concluded that Holden had marked posttraumatic changes with bone-on-bone contact in the medial compartment, possible loose-body super-lateral aspect of the knee, patellofemoral changes and spurring, and end-stage arthritis. On April 24, 1992, Holden had a follow-up visit during which Gilles suggested that she might need knee replacement surgery some day.

Wal-Mart adduced evidence that on May 13, 1992, Holden applied for disability insurance benefits from the Social Security Administration. In her application, she stated that she was unable to work due to a disabling condition that existed on December 1, 1991. On May 20, 1992, Holden completed a dis-ability report for Social Security in which she stated that as of that date, she experienced severe pain and swelling in her right knee and was unable to be on her feet for long periods of time. Holden was issued her handicapped parking permit on June 2, and on June 26, she received disability benefits due to obesity and traumatic arthritis of the knee.

Following the fall, on July 7, 1992, a Dr. Ropp, a physician in Gilles' office, saw Holden because of the fall. Ropp did a range of motion evaluation and concluded that Holden's range of motion was better than it had been in April. Holden visited Gilles on July 14 as a followup for foot pain, and Holden did not mention any knee pain at that time. A followup visit for both foot and knee pain occurred in August. On September 28, Holden saw Ropp for left-foot pain. She told Ropp she had been standing processing tomatoes over the past 2 weeks but did not mention her knee.

In November 1992, Holden was seen by Gilles for knee pain. At that time, x rays were taken, and a comparison with the x rays from April 1992 showed the same findings. In March 1993, Holden underwent a gastric stapling operation. Gilles testified that one of the reasons for the operation was to enable Holden to lose enough weight to allow for a right-knee replacement.

Gilles testified that if Holden had not fallen, she probably could have waited between 5 to 10 years before requiring a total knee replacement. Gilles also testified that prior to the fall, Holden had an 87-percent lower extremity impairment and a 35-percent whole person impairment and that after the fall, this increased to a 97-percent lower extremity impairment and a 39-percent whole person impairment. Gilles' charges for treatment related to the fall were $646.75.

The record reflects that Holden first saw Dr. Mark Alan McFerran, another orthopedic surgeon, on January 10, 1994. McFerran subsequently performed a total knee replacement and placed Holden on maximum medical improvement in May 1995. McFerran testified that following the fall, Holden complained of pain in her right knee, along with a catching and popping in the knee. Holden indicated to McFerran that she was cautious and apprehensive because at times the knee would give out on her. McFerran stated that Holden had a preexisting condition in her knee. He testified that she had severe end-stage arthritis which had completely worn out the cartilage in her knee and that this was true prior to the fall. McFerran testified that he did not think the impairment rating Holden had prior to the fall would have been significantly different afterward. However, McFerran also testified that he thought the fall at Wal-Mart hastened the need for Holden to have her knee replaced.

The total of McFerran's charges was $24,707.91. McFerran testified that the hardware involved in the knee replacement has a lifespan of 15 to 20 years, after which Holden would require another replacement costing between $40,000 and $50,000, barring complications. Holden presented evidence regarding the pain she experienced after the fall and her need for assistance due to the fall.

The jury returned a verdict finding 40 percent negligence on the part of Holden and 60 percent negligence on the part of Wal-

Mart. The jury determined total damages to be $6,000. As a result, Holden recovered $3,600. Holden filed a motion for new trial alleging that the verdict was contrary to law and was not supported by sufficient evidence, that an error of law occurred at trial, and that there was an error in the assessment of recovery. The district court overruled the motion. Holden appeals.

## ASSIGNMENTS OF ERROR

Holden assigns that (1) the district court erred in refusing to allow evidence regarding same or similar falls in other Wal-Mart parking lots and (2) the verdict was inadequate and unreasonable based on the evidence presented at trial.

## STANDARD OF REVIEW

■ In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Gittins v. Scholl*, 258 Neb. 18, 601 N.W.2d 765 (1999); *Franksen v. Crossroads Joint Venture*, 257 Neb. 597, 599 N.W.2d 603 (1999).

■ Because the exercise of judicial discretion is implicit in determinations of relevancy and admissibility under Neb. Rev. Stat. § 27-401 (Reissue 1995) and § 27-403, the trial court's decision will not be reversed absent an abuse of discretion. *Seeber v. Howlette*, 255 Neb. 561, 586 N.W.2d 445 (1998). An abuse of discretion occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Reimer v. Surgical Servs. of the Great Plains*, 258 Neb. 671, 605 N.W.2d 777 (2000).

■ The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Hausman v. Cowen*, 257 Neb. 852, 601 N.W.2d 547 (1999); *Jones v. Meyer*, 256 Neb. 947, 594 N.W.2d 610 (1999).

## ANALYSIS

Holden contends that exhibit 67 was relevant to show that Wal-Mart had notice of the hole or to show notice that the hole

was a pothole and a dangerous condition. Wal-Mart objected to the evidence on the basis that it was not relevant, that it did not portray instances that were the same or similar to Holden's fall, and that any probative value of the evidence was outweighed by its potential for prejudice. The trial court excluded the evidence under § 27-403 on the basis that any probative value was outweighed by its potentially prejudicial effects. We conclude that the evidence was not relevant because Holden failed to show how the prior falls, depicted in exhibit 67, were substantially similar to her own fall.

Under Neb. Rev. Stat. § 27-402 (Reissue 1995), evidence which is not relevant is not admissible. An issue as to the existence or occurrence of a particular fact, condition, or event may be proved by evidence as to the existence or occurrence of similar facts, conditions, or events under the same or substantially similar circumstances. *Ellis v. Union P. R. R. Co.*, 148 Neb. 515, 27 N.W.2d 921 (1947). See, also, *Cromwell v. Fillmore County*, 122 Neb. 114, 239 N.W. 735 (1931) (error to exclude evidence of prior accident at same location that occurred under similar circumstances).

However, where an individual fails to adequately demonstrate how prior occurrences are substantially similar, evidence of prior occurrences is irrelevant and, thus, inadmissible. See, generally, *Ramirez v. Sears, Roebuck & Co.*, 236 A.D.2d 530, 653 N.Y.S.2d 944 (1997); *Mobbs v. Central Vermont Ry.*, 155 Vt. 210, 583 A.2d 566 (1990). Holden relies primarily on the case of *Templeton v. Chicago & N.W. Transp. Co.*, 257 Ill. App. 3d 42, 628 N.E.2d 442, 194 Ill. Dec. 945 (1993), for the proposition that when evidence is sought to be admitted to show only a general knowledge or notice that a site is hazardous, then it is unnecessary to establish a foundation showing similarity between the prior accidents and the accident at issue. We decline to adopt this position.

In this case, the reports of falls portrayed in exhibit 67 occurred at different locations across the country, under a wide variety of circumstances. Although they all involve a fall in a parking lot, conditions vary widely among them. For example, the falls portrayed in exhibit 67 occurred at differing times of the day, under differing lighting conditions, and under differing

weather conditions. Further, a review of the photographs attached to the reports shows a variety of different surface conditions. Holden did not attempt, in an offer of proof, to lay foundation showing that each of the incidents portrayed in exhibit 67 was substantially similar to the circumstances surrounding her own fall. Rather, Holden simply offered all the reports as one exhibit. In the alternative, Holden asked the court to enter into evidence the incidents portrayed as involving potholes but did not identify which incidents those were or how they were otherwise similar to the fall in her case. Under these circumstances, Holden did not establish that the incidents documented in exhibit 67 were substantially similar to her fall. Thus, the district court was correct in excluding the evidence.

Holden next contends that the jury erred in its computation of damages, arguing that the jury made a mistake.

> "An award of damages may be set aside as excessive or inadequate when, and not unless, it is so excessive or inadequate as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. . . . If an award of damages shocks the conscience, it necessarily follows that the award was the result of passion, prejudice, mistake, or some other means not apparent in the record."

*Woollen v. State*, 256 Neb. 865, 890, 593 N.W.2d 729, 745 (1999).

We conclude that the award in the instant case was not the result of a mistake. Rather, it was the result of conflicting evidence at trial. Evidence was presented at trial regarding Holden's previous problems with her right knee, and there was conflicting evidence regarding the effect of the fall on this preexisting condition. Holden testified regarding the additional pain and difficulties the fall caused, and her physicians indicated that the fall sped up the need for her to have knee replacement surgery. However, there was also evidence that Holden had been having similar knee pain causing difficulty in her life prior to the fall. However, she did not report the additional pain in several following appointments with her physicians. The evidence was strong that Holden would, at some point, have undergone knee replacement surgery regardless of the fall. However, when she might have done so was unclear.

Based on the conflicts in testimony, the jury could have reached any number of factual conclusions. A jury is entitled to determine what portion of a claimed injury was proximately caused by the incident and what portion of the medical bills was reasonably required. *Vacanti v. Master Electronics Corp.*, 245 Neb. 586, 514 N.W.2d 319 (1994). The jury in this case could have determined that the fall was the proximate cause of only a small portion of Holden's damages. The evidence for such a determination is apparent from the record, and we will not disturb that determination on appeal.

## CONCLUSION

We conclude that Holden failed to show a substantial similarity between the circumstance of her fall and the evidence she sought to introduce of falls at other locations. We further conclude that the amount of damages awarded by the jury is supported by the record. Accordingly, we find no error and affirm.

AFFIRMED.