IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

ALLEN V. NS WORLD SERV.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BYRON ALLEN, JR., AND MONIQUE WISE, COPERSONAL REPRESENTATIVES OF THE
ESTATE OF IYANA N. ALLEN, DECEASED, APPELLANTS AND CROSS-APPELLEES,
v.
NS WORLD SERVICE, INC., DOING BUSINESS AS OMAHA EXECUTIVE INNS & SUITES,
DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE AND CROSS-APPELLANT,
AND DESHAYLA NEAL, THIRD-PARTY DEFENDANT, APPELLEE.

Filed December 10, 2013.    No. A-12-902.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

David E. Copple and Michelle M. Schlecht, of Copple, Rockey, McKeever & Schlecht, P.C., L.L.O., and Douglas P. Peterson and Brett Anthony, of Anthony & Peterson, L.L.P., for appellants.

Earl G. Greene III and Michael T. Gibbons, of Woodke & Gibbons, P.C., L.L.O., for appellee NS World Service, Inc.

IRWIN, MOORE, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Byron Allen, Jr., and Monique Wise, copersonal representatives of the estate of Iyana N. Allen, deceased (the Estate), brought this action seeking to recover damages as a result of the February 27, 2010, drowning death of 4-year-old Iyana in a hotel swimming pool. A jury returned a verdict in favor of the defendant, NS World Service, Inc. (NSWS), doing business as Omaha Executive Inns & Suites. In this appeal, the Estate alleges that the district court erred in not allowing the Estate to present evidence of a prior drowning in 2006 at the same hotel

location, that the jury's verdict was contrary to the evidence adduced at trial, and that the district court erred in denying a motion for new trial. We affirm.

## II. BACKGROUND

This case arises out of a tragic incident wherein Iyana, who was not yet 5 years of age at the time, drowned in the swimming pool of a hotel owned by NSWS. Iyana was attending a birthday party at the time of the event.

The evidence adduced at trial indicated that Iyana was attending a birthday party hosted by DeShayla Neal and that the party comprised 12 to 14 children under 14 years of age. A police investigation indicated that there were "perhaps 12 or so children under the age of 10, and maybe three or four teenagers, [and] at most, one adult that may have been in the pool area . . . with the children." Several witnesses testified about a lack of adult supervision of the children in the pool area.

When Neal discovered that Iyana was missing, she walked around the pool area, went to the hotel lobby, and engaged a hotel employee to help her look for Iyana. Testimony indicated that the bottom of the pool was not visible, as the water was "cloudy" or "murky." Iyana's body was eventually located at the bottom of the pool.

The Estate brought suit against the owner of the hotel, NSWS; the entity the Estate believed had been operating the hotel, JNS Lodging, Inc. (JNS); and the person the Estate believed had been the operating manager of the hotel, Nammi Song. The Estate alleged that Iyana's death had been the result of negligence on behalf of the various defendants. NSWS filed a third-party suit, naming as a third-party defendant Neal, the person who hosted the birthday party Iyana had been attending at the time of her drowning.

Song filed a motion in limine which sought, in part, to prevent the Estate from adducing evidence at trial concerning a prior incident in 2006 in which another person had drowned in the hotel's swimming pool. NSWS and JNS similarly moved in limine concerning the prior drowning incident. A hearing was held on the motions in limine, although the record from that hearing has not been provided to this court on appeal.

The district court sustained the motions in limine concerning evidence of the prior 2006 drowning incident. The court concluded that the Estate had not adduced sufficient evidence to demonstrate that the prior 2006 drowning and the instant drowning occurred under substantially similar circumstances.

Song and JNS were both dismissed from the proceedings, on the motion of the Estate, prior to trial.

Prior to the start of trial, the Estate moved the district court to reconsider its ruling on the motions in limine. The Estate argued that the two drowning incidents were substantially similar, and the Estate offered and the district court received a copy of a police report detailing the police investigation of the 2006 drowning incident. The court held, again, that the Estate had not demonstrated sufficient similarity between the two drowning incidents to make evidence of the prior drowning admissible.

During the course of the trial, the Estate moved to make an offer of proof concerning the prior 2006 drowning incident. The Estate indicated that it would like to "attach" two exhibits related to the prior incident--the police report previously offered and received and "a copy of the

two investigations done by the Douglas County Health Department" concerning the prior incident. The Estate indicated it "would just attach those and would like to make a record that -- just based on the Court's prior to ruling to Motion in Limine." The Estate did not specifically offer the county health department exhibit into evidence, and the court never made any ruling receiving that exhibit into evidence. NSWS objected to the two exhibits and iterated its earlier argument that there was not substantial similarity between the two incidents. The court never further ruled with respect to the offer of proof.

At trial, NSWS offered the testimony of Dr. John Fletemeyer, an expert and professor of aquatics at Florida International University, who had conducted extensive research and consulting work in the area of water safety education. Dr. Fletemeyer's focus was on drowning research and behavior, and he testified that he had reviewed or been involved in more than 250 lawsuits related to drowning and had reviewed 200 to 300 other drowning cases.

Dr. Fletemeyer testified concerning the evidence he had reviewed in this case, which included depositions and a video of the drowning captured by a hotel video camera. He testified about reports concerning the clarity of the water at the time of the incident, as well as the supervision by adults at the time of the incident. Dr. Fletemeyer testified about the difference between an active and a passive drowning, wherein an active drowning includes active visual signs of struggle and distress.

Dr. Fletemeyer testified that when watching the video of Iyana's drowning, there were visible signs of an active drowning occurring. He testified that neither the water clarity nor the fact that the hotel allowed a birthday party to take place were the cause of Iyana's drowning. Rather, he opined that Iyana's drowning was a preventable drowning caused by a lack of proper adult supervision. He opined that any adult near Iyana at the time of the drowning would have been able to save her life.

At the conclusion of a several day trial, the jury returned a verdict in favor of NSWS. The jury completed a verdict form in which it indicated that it had found that "[the Estate had] failed to meet [its] burden of proof" and "the jury [did] find for [NSWS]." The Estate now appeals, and NSWS cross-appeals.

## III. ASSIGNMENTS OF ERROR

On appeal, the Estate asserts that the district court erred in refusing to admit evidence concerning the prior 2006 drowning incident, that the jury's verdict was clearly wrong, and that the court erred in denying the Estate's motion for new trial.

On cross-appeal, NSWS asserts that the district court erred in not granting NSWS a directed verdict, in denying certain admissions against interest, in striking an asserted comparative fault defense, and in denying certain evidence proffered by NSWS.

## IV. ANALYSIS

### 1. THE ESTATE'S DIRECT APPEAL

On appeal, the Estate challenges the district court's refusal to admit evidence concerning the prior 2006 drowning incident, the sufficiency of the evidence to support the jury's verdict, and the court's denial of the Estate's motion for new trial. We find no merit to any of these assertions.

(a) Evidence of Prior 2006
Drowning Incident

The Estate first asserts that the district court erred in denying evidence concerning the prior 2006 drowning incident. The Estate asserts that the prior 2006 drowning incident was substantially similar to the present incident and that evidence concerning it was admissible to show notice and actual knowledge of the dangers of cloudy pool water and failure to comply with regulations concerning operation of a swimming pool. We find no abuse of discretion by the court in concluding that the Estate failed to demonstrate sufficient similarity to make the evidence relevant and admissible.

In proceedings in which the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Holden v. Wal-Mart Stores*, 259 Neb. 78, 608 N.W.2d 187 (2000). Because the exercise of judicial discretion is implicit in determinations of relevance and admissibility under Neb. Rev. Stat. §§ 27-401 and 27-403 (Reissue 2008), the trial court's decision will not be reversed absent an abuse of discretion. *Holden v. Wal-Mart Stores, supra.* An abuse of discretion occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

Under Neb. Rev. Stat. § 27-402 (Reissue 2008), evidence which is not relevant is not admissible. An issue as to the existence or occurrence of a particular fact, condition, or event may be proven by evidence as to the existence or occurrence of similar facts, conditions, or events under the same or substantially similar circumstances. *Holden v. Wal-Mart Stores, supra.* Relevant evidence of other similar accidents or occurrences is admissible to show that a defendant had notice and actual knowledge of a defective condition, provided that the accidents or occurrences were substantially similar; i.e., the prior accidents or occurrences happened under substantially the same circumstances and were caused by the same or similar defects and dangers. *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006). However, where an individual fails to adequately demonstrate how prior occurrences are substantially similar, evidence of prior occurrences is irrelevant and, thus, inadmissible. *Id.*; *Holden v. Wal-Mart Stores, supra*.

The proponent of the evidence bears the burden to establish the similarity between the other accidents and the accident at issue before the evidence is admitted. *Shipler v. General Motors Corp., supra*. The proffered evidence must satisfy the substantial similarity test for it to be properly admitted into evidence, whether to prove defect, causation, or knowledge/notice. *Id.*

In *Holden v. Wal-Mart Stores, supra*, the appellant fell after stepping in a hole in the parking lot of a store owned by Wal-Mart Stores, Inc. She subsequently underwent knee replacement surgery and incurred medical bills, and she brought suit seeking an award of damages. During trial, she offered evidence of instances at other Wal-Mart Stores locations involving falls due to the condition of the pavement in the stores' parking lots. The trial court excluded the proffered evidence. *Id.*

On appeal, the Nebraska Supreme Court held that the proffered evidence was not relevant because the appellant had failed to show how the prior falls were substantially similar to her own

fall. *Id.* The Supreme Court noted that the evidence proffered by the appellant showed that the prior incidents had occurred at different locations across the county and had occurred under a variety of circumstances. *Id.* Examples of some of the differences the Supreme Court pointed to in concluding the appellant had failed to demonstrate sufficient similarity included that the falls had occurred at different times of day, under different lighting conditions, and under different weather conditions. *Id.* Moreover, photographs of the locations of the various falls demonstrated a variety of surface conditions. The appellant had not attempted to lay foundation showing the substantial similarity and had, instead, merely offered a single exhibit that included reports of all of the other falls. Under those circumstances, the Supreme Court held that the appellant had failed to establish substantial similarity sufficient to make evidence of the other falls relevant and admissible.

In *Shipler v. General Motors Corp., supra*, the appellee was injured in a motor vehicle rollover that rendered her a quadriplegic. At trial, the appellee intended to offer evidence describing a number of other rollover accidents. General Motors Corporation filed a motion in limine to bar evidence of the other incidents, asserting that they were dissimilar in a variety of ways. At a pretrial hearing, the appellee presented testimony from an expert witness who testified regarding the elements which he claimed made the incidents substantially similar, including that all of the accidents involved the same model of vehicle, involved rollover accidents, and demonstrated roof crush causing severe head or neck injury. The evidence adduced demonstrated that each accident was a rollover, each involved more than a single revolution of the vehicle, each involved head or neck injury suffered as a result of contact with the roof of the vehicle, each involved the victim's being seated in the same position as the appellee in the front seat and on the side of the vehicle that was the second to have contact with the ground, and each vehicle involved was in the same family of vehicles manufactured by General Motors Corporation. The trial court admitted the proffered evidence. *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006).

On appeal, the Nebraska Supreme Court upheld the admission of the evidence. *Id.* The Supreme Court noted that the trial court had conducted an extensive hearing to consider the admissibility of the evidence, that an expert witness had testified about the similarities in the accidents, that all involved equivalent vehicles, that all were rollover incidents, and that all demonstrated roof crush resulting in severe head or neck injury. *Id.* Moreover, the trial court had granted a limiting instruction directing the jury about the proper use of the admitted evidence. *Id.* The Supreme Court found no abuse of discretion by the trial court in admitting the evidence and giving a limiting instruction as to its proper use.

We find that the present case is far more similar to the situation presented in *Holden v. Wal-Mart Stores*, 259 Neb. 78, 608 N.W.2d 187 (2000). In the present case, the record presented to us suggests that the Estate presented almost no evidence to the court to demonstrate substantial similarity between the prior 2006 drowning incident and the instant drowning.

After motions in limine were filed seeking to exclude evidence of the prior 2006 drowning incident, a hearing was held to consider the motions. That hearing, however, has not been presented for our consideration on appeal.

At the start of trial, the Estate moved the court to again consider allowing admission of the evidence concerning the prior 2006 drowning incident. The Estate argued that the focus of

the Nebraska Supreme Court in *Holden v. Wal-Mart Stores, supra*, was in considering similarities in the time of day, lighting, and weather conditions, and suggested that those conditions were substantially similar in both drownings. The Estate argued that a police report concerning the 2006 incident indicated that the water in the swimming pool was cloudy and nobody could see the bottom of the pool, that somebody discovered the victim was missing and looked for the victim but could not see the victim in the pool, and that the victim was eventually found in the pool. The court received the police report from the 2006 drowning.

NSWS argued that the Estate had presented no evidence concerning maintenance of the pool prior to the 2006 drowning incident, no evidence concerning the chemical values prior to the 2006 drowning incident, and no evidence of the applicable swimming pool regulations at the time of the 2006 drowning incident, and that allowing evidence concerning the 2006 drowning incident in the present case would essentially force NSWS to relitigate the 2006 drowning incident.

The Estate asserted that testimony in a deposition of Song included information about the maintenance and chemical levels in 2006. The Estate did not offer any deposition, however, and no deposition of Song appears in our record.

The trial court concluded again that the Estate had not demonstrated sufficient similarity between the incidents and concluded that even if the evidence was relevant, it would be unduly prejudicial and inadmissible under § 27-403.

Later, during the course of the trial, the Estate made an offer of proof concerning evidence of the prior 2006 drowning incident. The Estate noted that the 2006 drowning incident occurred in the same pool, referred to the police report previously received as evidence, and also referred to one exhibit that apparently contained two investigations conducted by the county health department regarding the 2006 drowning incident. The Estate never actually offered the latter exhibit, merely indicating that it would like to "attach" the exhibits to its offer of proof. The court never ruled that the latter exhibit was received.

On the record presented to us on appeal, we cannot find an abuse of discretion by the district court's finding that the Estate failed to demonstrate sufficient substantial similarity to make the proffered evidence relevant and admissible. The Estate did not offer any testimony to explain any similarities in the two incidents, and the evidence that was offered failed to demonstrate substantial similarity.

The evidence adduced demonstrated that the two drownings occurred in the same pool and that witnesses described the water as cloudy at the time of both incidents. There was no evidence to demonstrate that the cloudy condition of the water was a contributing factor in either drowning, as there was no evidence indicating it was a contributing factor in the 2006 drowning, and as discussed below, the evidence in the present case supported a conclusion that it was not a contributing factor in the present drowning. There were no details concerning chemical levels at the time of the 2006 drowning, beyond general references in the police report to records being kept and the levels being "fine" earlier in the day. There was no evidence adduced concerning the regulations governing operation of the pool in 2006. The evidence concerning the 2006 drowning did not provide details concerning the number of people in the pool area, the condition of the lighting at the time of the drowning, or how long the water had apparently been cloudy.

The Estate made very little showing about any substantial similarities between the two drownings, beyond them occurring at the same pool and in cloudy water. The Estate's showing was far less than that of the proponent of the evidence in *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006). Moreover, the district court in the present case found the showing to be insufficient. Given our standard of review, we cannot say that this conclusion was an abuse of discretion. This assigned error is without merit.

(b) Jury's Verdict

The Estate next asserts that the verdict of the jury was not supported by the evidence and was clearly wrong. The jury heard testimony from an expert witness on behalf of NSWS who specifically opined that the drowning was not caused by the negligence of NSWS. That testimony was sufficient to support the jury's verdict.

The Estate recognizes on appeal that a jury verdict will not be set aside unless clearly wrong and that it is sufficient if there is any competent evidence presented to the jury upon which it could find for the successful party. *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013). In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Id.*

The Estate asserts on appeal that the evidence of NSWS' negligence was "overwhelming." Brief for appellant at 25. The Estate points to evidence that NSWS had been advised that Neal was hosting a birthday party in the pool area, contrary to hotel policy, and that NSWS did not take action to stop the party or close the pool. The Estate also points to evidence from a number of witnesses about the water being cloudy and murky. The Estate also points to evidence that the hotel's pool chemical levels had not been checked on three different occasions on the date in question, contrary to applicable regulations concerning operation of a pool. Finally, the Estate points to evidence that more than one person had walked around the pool looking for Iyana before her body was located but had not been able to see her body in the pool.

NSWS, however, presented evidence from an expert witness in the form of testimony from Dr. Fletemeyer, who testified that he has reviewed or been involved in more than 250 lawsuits related to drowning and reviewed 200 to 300 other drowning cases.

Dr. Fletemeyer testified concerning the evidence he had reviewed in this case, which included depositions and a video of the drowning captured by a hotel video camera. He testified about reports concerning the clarity of the water at the time of the incident, as well as the supervision by adults at the time of the incident. Dr. Fletemeyer testified about the difference between an active and a passive drowning, wherein an active drowning includes active visual signs of struggle and distress.

Dr. Fletemeyer testified that when watching the video of Iyana's drowning, there were visible signs of an active drowning occurring. He specifically testified that neither the water clarity nor the fact that the hotel allowed a birthday party to take place were the cause of Iyana's drowning. Rather, he opined that Iyana's drowning was a preventable drowning caused by a lack of proper adult supervision. He opined that any adult near Iyana at the time of the drowning would have been able to save her life.

The jury rendered a verdict in favor of NSWS. Dr. Fletemeyer's testimony, taken in the light most favorable to NSWS, is sufficient to support a conclusion that regardless of whether any conduct on the part of NSWS fell below the applicable standard of care, that conduct did not cause Iyana's drowning. We are not free to disregard Dr. Fletemeyer's testimony, and we cannot conclude that the jury's verdict is clearly wrong. The Estate's assignment of error to the contrary is without merit.

### (c) Motion for New Trial

Finally, the Estate asserts that the district court erred in denying its motion for new trial. The entire basis for the Estate's assertion that a new trial was warranted in this case is its assertion that "as set forth [previously in the Estate's brief], the jury verdict was not sustained by sufficient evidence." Brief for appellant at 29. Inasmuch as we have already concluded that the jury verdict was sustained by sufficient evidence, we find no abuse of discretion by the district court in denying the motion for new trial.

### 2. NSWS' CROSS-APPEAL

NSWS has brought a cross-appeal, asserting a variety of alleged errors. NSWS' assigned errors include assertions that the district court erred in denying a directed verdict, in denying admissions against interest, in striking a comparative fault defense, and in denying certain evidence proffered by NSWS.

In light of our conclusions above, affirming the jury's verdict in favor of NSWS and rejecting the Estate's assertions on direct appeal, there is no need to further address the assignments of error in the cross-appeal.

### V. CONCLUSION

We find no merit to the Estate's assertions on appeal. The district court did not abuse its discretion in finding that the Estate failed to demonstrate substantial similarity between a prior incident and the incident in this case to make evidence of the prior incident relevant and admissible. The jury's verdict was sustained by sufficient evidence, and the district court did not abuse its discretion in denying a motion for new trial. We decline to address the issues raised on cross-appeal, because our ruling on the direct appeal renders them moot. We affirm.

AFFIRMED.